# CHARLESTOWN.

MILLER v. LAKE.

Submitted June 17, 1884—Decided September 20, 1884.

(*WOODS, JUDGE, Absent.)

Where A. delivered a claim to B. to be by him collected and paid to C., and B. agreed with C. to collect said claim and pay it to him, and B. refusing after he has collected the claim to pay it over, C. may either sue him at law for money had and received to his use, or he may enforce the trust in a court of equity.

JOHNSON, PRESIDENT, furnishes the following statement of the case:

*Counsel below.

In July, 1878, the plaintiffs filed their bill in the circuit court of Barbour county against John M. Lake, Henry Deahl, Jesse B. Poling, late constable of Barbour county, Martin G. Poling, his surety, and John M. Rogers, alleging that Lake was indebted to them for goods, &c., to the amount of one hundred and seven dollars; .that in 187– Lake transferred as collateral security for said debt two promissory notes executed by said Henry Deahl, to said Lake, one dated January 12, 1874, for sixty-four dollars and seventy-five cents and the other dated February 28, 1874, for fifty dollars and seventy-six cents; that said notes were by plaintiffs sent for collection to one F. R. Ford, of said county of Barbour; that he learned by a letter from said Ford, that Lake had fraudulently obtained said notes from Ford and placed them in the hands of J. B. Poling, constable of said county, for collection, who receipted to said Lake therefor " for the use of William Miller & Co.; " that judgments were obtained on said notes in the name of " John M. Lake for the use of William Miller & Co.;" that on February 17, 1876, the said Deahl presented to said Poling the receipt given Lake for said claims and proposed to surrender it to Poling, if he would give him a receipt for the said judgments, which he did; that having ascertained these facts, and that said Poling and Deahl with the aid and connivance of Lake had conspired and colluded to "cheat, hinder and preclude" the plaintiffs from the collection of their debt, they made demand upon Lake to collect said money; that Lake admitted to them in writing the part he had acted in shifting the said debt due from said Deahl to the plaintiffs, and agreed to pay them the debt in full; that Lake admitted that he delivered Poling's receipt to Deahl, but that no money was passed between them, and claimed that he delivered the receipt in consideration of the delivery to him by Deahl of certain bonds said Deahl held against Taylor county. The bill charges, that Lake and Deahl colluded to cheat and defraud the plaintiffs, and further that said Deahl did transfer said county bonds to said Lake in consideration of the transfer from said Lake of the receipt of Poling, which he held for the collection of said debt for the use of William Miller & Co.; that John M. Rogers, sheriff or collector of Taylor county, received said bonds for collec-

tion, "which money when collected was to be paid to the plaintiff, and the said John M. Rogers so agreed and undertook to do," which appears by his admission marked "AA" and made part of the bill. The bill charges collusion and fraud against the said defendants and prays, "that the plaintiffs be decreed the payment of their debt and all proper costs against each and all the defendants," &c.

At November term, 1879, on motion of the plaintiffs the cause was remanded to rules with leave to file an amended bill. The amended bill was filed and alleges, that the bonds · received for collection by Rogers amounted to more than their debt, and that a contract was made between Lake and Rogers by which Rogers was to pay the plaintiffs' debt, when he collected the bonds; that Lake notified complainants of said agreement, which they accepted and notified Rogers of such acceptance and applied to Rogers for their money, and "Rogers admitted he held said money in trust for plaintiffs." They charge that Rogers long since collected said money on said bonds "and now fraudulently withholds it from them." They charge that "Rogers accepted said bonds in trust for the payment of the complainants' debt, and received the money in trust for the complainants and agreed to pay the same to plaintiffs." They pray for general relief.

The defendants Lake and Rogers demurred to the bill; and their demurrer was overruled, and the defendants ruled to answer. They severally answered the bill. Depositions were taken; and the court on the 3d day of November, 1882, entered a personal decree in favor of the plaintiffs against J. M. Rogers for one hundred and seventy-two dollars and sixty-nine cents, and against John M. Lake for one hundred and eighty-three dollars and twenty-four cents, the full amount of the collaterals with interest, which was to be credited with the one hundred and seventy-two dollars and sixty-nine cents decreed against Rogers, and also decreed costs against said defendants.

From this decree Lake and Rogers appealed.

*Martin & Woods* for appellants.

*A. C. Bowman* for appellees.

JOHNSON, PRESIDENT:

The first questions presented is: Has equity jurisdiction of this case? Should the demurrer have been sustained? Judge Story, 2 Eq. Jur. sec. 1041 says: "In the common case where money or other property is delivered by a bailor to B. for the use of C. or to be delivered to C. the acceptance of the bailment amounts to an express promise from the bailee to the bailor, to deliver or pay over the property accordingly. In such a case it has been said that the person for whose use the money or property is so delivered, may maintain an action at law therefor against the bailee, without any further act or assent on the part of the bailee; for a privity is created between them by the original undertaking. But of this doctrine some doubt may perhaps be entertained, unless there is some act done by the bailee, or some promise made by him, whereby he shall directly contract an obligation to such person, to deliver the money or other property over to him; otherwise it would seem that the only contract would be between the bailor and his immediate bailee. But be this as it may it is certain that a remedy would lie in equity under the like circumstances as a matter of trust; for it is laid down in a work of very high authority 'if a man give goods or chattels to another upon trust to deliver them to a stranger chancery will oblige him to do it.'"

Under the circumstances set out in the original and amended bills we have no doubt an action at law would have been proper to compel the payment of the money, after it was collected, to William Miller & Co. as money received to their use. (*Nutter* v. *Sydenstricker*, 11 W. Va. 535.) But it is one of those cases of trust, in which equity has concurrent jurisdiction with the law court. The arrangement made by Lake with Rogers clearly constituted him trustee tor the plaintiffs; and when the money was collected by him as such trustee, he should have paid it over to the plaintiffs. The demurrer was properly overruled.

Lake in his answer relies on the statute of limitations. It is clear from the record that the claim is not barred.

Lake denies the material allegations of the bill, and so does the defendant, Rogers; but the allegations of the bill and amended bill are substantially proved. It appears that

the plaintiffs accepted the collaterals in satisfaction of their debt, and in the bill and amended bill agree to take the amount of the claim against Taylor county, which was collected by Rogers in satisfaction of the collaterals against Deahl. The decree therefore for the amount of said claim and interest amounting at the date of the decree to one hundred and seventy-two dollars and sixty-nine cents with interest from that date is right, and so far it is affirmed, and the appellees must recover of said J. M. Rogers the costs of this appeal, but that portion of said decree which is against J. M. Lake is reversed, and the decree corrected so as to give costs in the court below against J. M. Rogers.

AFFIRMED IN PART.     REVERSED IN PART.