# CHARLESTON.

## BIRD v. STOUT et al,

Submitted June 12, 1894.—Decided December 8, 1894.

1. CONSTRUCTION OF WILL—CHARGE ON LAND.

   A will gives several pecuniary legacies, and then gives a sum of money to three children, and then gives "the residue of my estate, real and personal," to a brother and three sisters, and appoints that brother its executor. Such will creates a charge on the land for the legacy to those children.

2. CONSTRUCTION OF WILL—RESIDUARY LEGATEE.

   Where it is manifest that it was the design of a testator that legacies should be paid at all events, the implication is that the residuary devisee or legatee shall have only the remainder after satisfaction of the previous dispositions.

3. CONSTRUCTION OF WILL—ENFORCEMENT OF CHARGE ON LAND.

   A will charges with a legacy land devised to a person, and he conveys it to a third person, who retains in his hands of the purchase money a sum to pay the legacy, and promises his grantor to pay it. Such grantor may maintain a bill in equity against his grantee, making the legatees parties, to compel the payment of such fund on the legacy, and to enforce the charge on the land.

4. AMENDED BILL.

   An amended bill must not introduce another and different cause of suit from that of the original bill. But an amended bill is no departure from the original if it tend to promote a fair hearing of the matter of controversy on which the suit was originally really based, provided it do not introduce a new substantive cause of suit different from that stated, and different from that intended to be stated in the original bill. An amended bill can not be allowed containing statements inconsistent with the nature of the original bill or changing the cause of suit. By it allegations may be changed or modified, and others added, provided the 'dentity of the cause of suit be preserved.

J. PHILIP CLIFFORD for appellant.

JOHN RUSSELL for appellee, cited 26 Gratt 207; 2 Sim. & Stu. 113; Cooper's Ch. Cas. 141; 1 Dan. Ch. 408; 3 Rand. 238; 9 Gratt. 1; 24 W. Va. 545; 2 Sto. Eq. Jur., § 1041.

BRANNON, PRESIDENT:

Appeal taken by Noah Stout from a decree of the Circuit Court of Harrison county requiring him to pay certain money.

The first error assigned is that the court erred in overruling the defendant's demurrer to the original and amended bills.

Wesley M. Bird filed a bill in equity against Noah W. Stout as sole defendant, alleging that Bird had conveyed to Stout land at the price of three thousand, five hundred and five dollars and ninety five cents, of which three thousand dollars had been paid, and the balance was to have been paid afterwards, the deed retaining a lien for the deferred payment; that part of the land once belonged to James H. Bird, who by will devised it to said Wesley M. Bird and others, and directed said plaintiff, Wesley M. Bird, as his executor, to pay each of three infant children of his sister, Caroline S. Stewart, one hundred dollars on their severally reaching the age of twenty one years; that, as plaintiff apprehended that these legacies might be chargeable on the land, he proposed to pay them out of the money Stout was to pay him as the deferred payment for the land, the children not yet having reached twenty one years of age; that the three thousand dollars recited in the deed as paid had not in fact been paid when the deed was made to Stout, and Stout did not then pay it to plaintiff, but paid debts of plaintiff to sundry creditors; that in order to ascertain the present value of the legacies of the children at the date of the conveyance, a calculation was made, and Stout gave plaintiff his note for four hundred and fifty eight dollars and ninety five cents which was intended, with the debts to be paid by Stout, to leave enough of the purchase-money in the hands of Stout to pay the legacies as they would fall due; that Stout had in fact paid only three thousand two hundred and seventy seven dollars and ninety four cents of the price of the land, and still owed plaintiff the residue of the purchase-money, being two hundred and twenty eight dollars and one cent, with interest from October 1, 1879; that the children enti-

tled to said legacies were born on certain dates, showing one of them then of age, and Stout had never paid plaintiff or any one else the money so reserved for said children out of said purchase-money, and Stout pretended that as no provision was made in the deed for the legacies or sums to be paid the children, and he had paid said note of four hundred and fifty eight dollars and ninety five cents, he had paid for the land in full, and owed nothing more on it.

Let us say that the demurrer to this bill was improperly overruled, as the legatees were necessary, but absent parties. That defect was cured by an amended bill which brought them before the court. This amended bill repeated the allegations of the original substantially, alleging that the sum left in Stout's hands was there left for the reason that the legacies it was set apart to pay were a charge on the land under the will of James H. Bird, and was a trust fund for the payment of the legacies; that without regard to any lien on the land Stout should be compelled to account for the fund as trustee for the legatees.

The original bill prayed that the two hundred and twenty eight dollars and one cent be decreed to be paid to plaintiff, while the amended bill prayed that one third of the fund be paid to each of the legatees, and that the land be subjected to its payment.

A specification of grounds of demurrer filed to both bills claims that the original bill shows no equity. We have no brief on behalf of appellant Stout to support this contention. Is it intended to say that equity has no jurisdiction? This question occurred to me as one of doubt on first impression, but my doubt has drifted away on further reflection.

I do not think equity jurisdiction can be based on the theory of a lien reserved in the deed, for the deed admits a down payment of three thousand dollars, and retains a lien for the balance of the purchase-money, and the note given for that balance is stated in the original bill to have been paid.

It may be said that the aim of the amended bill to sustain jurisdiction in equity on the idea of a trust, and that this is a suit to make the trustee account, is untenable. I doubt

not but that by common-law the children entitled to the money left in Stout's hands could maintain an action of law for money had and received to their use, and under section 2, chapter 71, Code. See *Miller* v. *Lake,* 24 W. Va. 545. I have not deemed it necessary to decide whether Bird could maintain *assumpsit* for breach of undertaking to pay the legacies or money had and received, as I think equity jurisdiction can be clearly supported on other definite grounds, namely, that a charge rests on the land under James H. Bird's will, and that the plaintiff may file a bill on the principle of *quia timet* to compel Stout to pay the legacies to his exoneration.

The will of James H. Bird did create a charge on the land for these legacies. It first gave several other pecuniary legacies, and then the fourth and last clause is as follows: "I give to the children of my sister, Caroline S. Stewart, three hundred dollars, when they are of age, to be equally divided between them. The residue of my estate, real and personal, I wish equally divided between my brother, Wesley M. Bird and my three sisters Emily S. Bird, Sarah I. Patton and Rebecca A. Bird." Wesley M. Bird is appointed executor. There is a charge on the realty for three hundred dollars. The testator intended it should be paid at all events, as he declares he prefers the legacies over the gifts to Wesley M. Bird and his sisters by saying he gives them what they are to get only after payment of legacies. The use of the word "residue" plainly tells that the brother and sisters are to get only a remnant. And the fact that he does not, in the residuary clause, separate the personal and real estate, but blends them together, and gives his brother and three sisters the residue of both, shows that he had his mind on both as a fund to answer for the legacies. And besides the personalty is inadequate—a good reason why he should invoke both to discharge the legacies. And the fact that Wesley M. Bird is executor and a devisee also is important. The case of *Dowman* v. *Rust,* 6 Rand. (Va.) 587, is exactly in point. It holds that if the personalty be inadequate, or there be expressions in the will tending to show that the testator had the land in mind, a court will make legacies a charge on land, rather than they shall go unpaid. In that case, a tes-

tator, whose personalty was inadequate to pay legacies, having one brother, who would have been distributee, gave pecuniary legacies to two friends, and devised all the rest of her estate, real and personal, to that brother, and appointed him executor, and it was held that there was a charge on the realty for the pecuniary legacies. So, also, *Thomas* v. *Rector*, 23 W. Va. 26, sustains this holding by authorities cited in its opinion, and in its syllabus, which is that "where it is manifest from the whole will that it was the design of the testator that the legacies should be paid at all events, the implication is that the residuary devisee or legatee shall only have the remainder after satisfaction of the previous dispositions." See 2 Lomax Ex'rs, side p. 86.

Thus the land is charged, and Stout took it with the burden of that charge. Who will question the right of the legatees themselves to sue in equity to subject the land? They could do so for two reasons: First. Because they are owners of the charge; second, because they can sue at law for the deposit left in Stout's hands, or in equity. *Miller* v. *Lake*, 24 W. Va. 545. And if they could sue, why not Bird? Has he not an interest such as will enable him to enforce the charge, and call on Stout to perform his duty of payment? Bird was bound for payment, and his land also, and he conveys that land with the obligation resting on it, which obligation Stout promised to remove, and was trusted with a fund for its removal. Does not this interest *per se* enable him to enforce the payment outside of considerations based on the principles of *quia timet?* He may be deemed a creditor holding legal title to the debt for benefit of legatees. But he and his property are endangered by Stout's failure to pay. Stout agreed to indemnify him. A surety, under this principle, can go into equity to have the one primarily bound pay to his relief. So can one who has a guaranty of indemnity. *Call* v. *Scott*, 4 Call 402; Bart. Ch. Prac. 282; 2 Story Eq. Jur. §§ 849, 850.

The legatees, the parties entitled to receive the money, are before the court. Surely Bird has such interest as to bring all parties interested before the court to abide its decree.

Another ground of demurrer is that the amended bill departs from the original bill by setting up a different cause of suit. I shall not enlarge on this, supposing that the position is plainly untenable under the liberality allowed in amending bills. Even by the strictest rule of amendment, this amended bill is justified. It is based on the same ground of suit and same facts touching that ground. It only brings before the court the legatees, the owners of the money, thus only making an amendment as to parties necessary to a decree on the original bill, and without whom as parties it was defective. The original demanded the money for Bird, but the prayer of the amended bill is that it be paid to the proper parties, the legatees entitled to it; and the very facts stated in the original bill called in law for payment to the legatees. Surely here is no departure. In *Lamb* v. *Cecil*, 28 W. Va. 653, it is held that while, under pretense of amendment, you can not introduce an original and different cause of action or ground of relief, yet, if the cause of action and relief sought are substantially the same, it is immaterial that the form in which the claim is presented by amendment differs essentially from that in the original bill. Here there is not even that difference. In *Kuhn* v. *Brownfield*, 34 W. Va. 252 (12 S. E. Rep. 519) it was held even at law—and surely equity is as liberal—that such amendments of pleadings should be allowed as tend to promote fair trial of the matter of controversy on which the action was originally really based, provided the amendments do not introduce a new substantive cause of action different from that declared upon, and different from that which the party intended to declare upon when he brought his suit; that amendments can not be allowed which are inconsistent with the nature of the pleadings or change the cause of action. Allegations may be changed, others added, provided the identity of the cause of action is preserved. Surely, under these principles, this amended bill is fully vindicated.

Next it is assigned as error that the evidence does not justify the decree rendered against Stout for the payment of the money to the legatees. This depends on a simple question of fact; that is, whether, as part of the purchase-money

for the land sold by Bird to Stout, a fund was deposited in Stout's hands to pay the legacies in question. The Circuit Court has found against the defendant on this issue, and I see no ground to disagree with—cetainly none to reverse—it. A witness (Peck) and the plaintiff say that a calculation was made about October 15, 1878, to ascertain the then present value of the legacies, and that Stout was present, and a sum was left in his hands to pay them. A witness (Knisely) was present, and corroborated Peck and Bird. Two other witnesses (Stewart and Cottrill) heard Stout admit in 1885, that there was money in his hands going to these children. Cottrill was guardian of one of the children and had a conversation with Stout, not casual, but specially touching it as in the interest of his ward, and his testimony has therefore the more weight. Stout, on the other side, is the only witness. Decree affirmed.