# CHARLESTON.

CLEAVENGER *v.* FRANKLIN FIRE INS. CO. OF WHEELING, W. VA.

Submitted January 11, 1900.—Decided March 31, 1900.

1. INSURANCE—*Application—Representations.*

   Where a party makes application for a policy of insurance to the agent of the company, designating in said application the company from which he desires the policy, describing therein the property, and answering the usual questions as to ownership, liens, etc., and in his absence, and without his consent or knowledge, said application is so changed as to make it an application to another and different company, which issues the policy, varying in several respects from the application, which latter is sent by mail to the assured, although such party accepts the policy, he is not bound by the representations and answers contained in said application, and said policy will not be avoided if such representations and answers, are not true. (p. 609).

2. SALE OF PROPERTY INSURED—*Decree—Possession—Title—Location.*

   Where, during the life of the policy, a decree is obtained in *invitum* for the sale of the property insured, but sale under said decree is not made until after the loss by fire, and then the property is bought in by the assured, and there is no change of possession, the policy will not be avoided by a clause therein providing that the policy shall become void if any change takes place in the title, interest, location, or possession of the property, or any part thereof, whether by sale, gift, or other voluntary act of the assured, or by legal process or judgment, or otherwise. (p. 608).

3. CONSTRUCTION OF POLICY LIBERAL—*Insured—Preference.*

   In the interpretation of a policy of insurance in all cases it must be liberally construed in favor of the insured, so as not to defeat, without necessity, his claim to the indemnity, which, in making the insurance, it was his object to secure; and, when the words are without evidence susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted. (pp. 609-610).

4. REMEDY—*Equity—Relief.*

A doubtful or partial remedy at law does not exclude the injured party from relief in equity.

5. POLICY— *Written Application—Proof.*

Where a policy of insurance is issued without any written application on the part of the assured so far as the facts appear, the assured, in offering in evidence the policy, is not required to read with it, as part thereof, a written application produced by the insurer, without proof that it was signed by the assured or his agent. (p. 605).

Appeal from Circuit Court, Roane County:

Suit by John C. Cleavenger against the Franklin Fire Insurance Company of Wheeling, West Virginia. Decree for plaintiff, and defendant appeals.

*Affirmed.*

HUBBARD & HUBBARD,    for appellant.

SCHILLING & STARKEY and WALTER PENDLETON, for appellee.

ENGLISH, JUDGE:

This was a suit in equity, brought by John C. Cleavenger against the Franklin Fire Insurance Company of Wheeling, West Virgiania, in the circuit court of Roane County. The plaintiff, in his bill, alleges that on the 17th of April, 1894, the defendant caused to be made a certain policy of insurance in writing, whereby, in consideration of eighteen dollars premium, said company insured said plaintiff against all direct loss or damages by fire to the amount of one thousand, eight hundred dollars, and would make good any such damage resulting from fire, not exceeding said sum, for the term of three years from April 17, 1894, at noon, to April 17, 1897, at noon, on certain premises and personal property situate therein, then, and ever since the property of plaintiff, in said policy described as follows:   one thousand, two hundred dollars on plaintiff's two-story tin-roof dwelling and additions thereto, occupied as a residence only (setting forth in detail what was included as part of the dwelling, as described in the policy, situated on a farm owned by assured near Spencer, West Virginia); six hundred dollars on household furniture (specifying the articles as mentioned in the policy);

the said loss or damage to be estimated acccording to the
actual cash value of said property immediately preceding
the fire or the time the loss should happen, to be paid by
defendant sixtv days after due notice and proof thereof
should be furnished to it in conformity with the conditions
of said policy, and compliance with same, unless said de-
fendant should give notice to plaintiff of its intention to re-
build or repair the damaged premises within thirty days
after fire and proof of loss, etc.; setting forth in substance
and effect the conditions, prohibitions, and stipulations of
said policy.    The plaintiff also alleges that at the time he
made application for said insurance he signed a written or
printed application thercfor, which was turned over to the
defendant's agent, and he has not since seen the same, nor
does he remember the contents thereof, nor know in whose
possession the same is, but was informed and believes the
defendant had  same in its custody, and he cannot, there-
fore, furnish the same, or file it with his bill, and calls on
defendant to produce and file said papers with its answer,
if the same be in its possession; that he was unable to pro-
duce or file in any suit or action said original policy of insur-
ance issued by defendant to him, or a copy thereof, because
the same had been lost or destroyed without the fault of
plaintiff; that he had searched diligently for said policy,
and was unable to find it and he verily believed the same was
destroyed by fire at the time the premises were destroyed
as therein stated.   The plaintiff further stated that he was,
both before, at the time of making said insurance policy,
and ever since then, interested in the insured premises
mentioned and described in said policy to the full value of
same; that the dwelling house, with its appurtenances, so
insured, was worth at least one thousand, eight hundred
dollars, and the personal property contained therein was
worth at least one thousand, two hundred and fifty dollars,
and that his interest in the property insured and de-
stroyed amounted in the aggregate to three thousand and
fifty dollars; that on or about the 4th of August, 1895, the
said dwelling house, with household furniture etc. men-
tioned in said policy, were consumed and destroyed by fire
and damage and loss were thereby occasioned to plaintiff
to the amount of three thousand and fifty dollars in such

manner and under such circumstances as to come within the stipulations, promises, and undertaking of defendant in said policy contained, and to render liable and oblige said defendant to insure the plaintiff to the amount of one thousand, eight hundred dollars against loss by fire, with interest from August 4, 1895, and to make good to him any such loss by fire as should happen by fire, not exceeding said sum of one thousand, eight hundred dollars, with interest as aforesaid; and that due notice and proof were afterwards made by plaintiff to defendant in conformity with the conditions of said policy; that, although sixty days had elapsed since such notice and proof were made to said defendant of said destruction by fire, and of the loss and damage thereby occasioned to the plaintiff, the same had not been paid or made good, but that the same, and every part thereof, was wholly unpaid and unsatisfied to him contrary to the force and effect of said policy; nor did the defendant within thirty days after final proof of the loss was received by it, give notice of its intention to rebuild, repair, or replace the property destroyed; and that although often requested, the defendant has not kept with plaintiff the agreement contained in said policy, but has broken same, and has hitherto wholly refused, and still refuses, to keep said agreement. The plaintiff further alleges that by reason of the loss of said policy of insurance he has no adequate and complete remedy at law, and is advised that a court of equity will give relief against the accident of said loss and destruction of said paper by setting up the evidence of plaintiff's claim against defendant, and will adjudicate the full merits of the claim; and he prays that, if he has failed in any particular to set out in his bill the contents of said policy so lost, defendant may be required to answer this bill, and disclose and discover in what respect plaintiff has so failed, and that he be relieved against the loss of said paper, and the evidence of the defendant's indebtedness may be set up, and that he may have a decree against defendant for said one thousand, eight hundred dollars, with interest, and general relief.

The defendant demurred to plaintiff's bill for want of equity, and because the bill failed to set forth the assured's application and survey, which, by the terms of the

policy, is made a part thereof, and because the bill does not show what loss or damage accrued to complainant by reason of the burning of the personalty, and because the bill does not set forth facts showing that the loss was such as to come within the terms of the policy; that the bill does not show compliance by the plaintiff with the conditions precedent of the policy sued on, and that it does not show when notice of loss and proof were made as required in the policy, and therefore does not show when the complainants's right to sue would accrue, if at all.   The defendant filed its answer to plaintiff's bill, admitting the issuance of the policy on the 17th of April, 1894, covering the dwelling house to the extent of one thousand, two hundred dollars, and personalty to the extent of six hundred dollars, and that the policy is set forth correctly, but that the application constitutes a part of the policy, and referring to the second section of the printed portion of the policy, which provides that "if an application, plan, or description of the property be made in procuring the insurance, or be referred to therein, it shall be part of the policy, and a warranty by the assured," and to the written part of the policy, which reads as follows:   "Special reference is made to assured's application and survey No. 881, which is hereby made a part of the policy, and a warranty by the asssured;" insisting that said application is a material part of the contract of insurance sued on, and is a warranty by the complainant, but was not set forth in the bill; and averring that such an application was made by the complainant in procuring said policy, and should have been set forth in his bill as part of the contract of insurance; and further alleging that said application was and had been in possession of the respondent, who, before the allegation of the bill in that respect was made, offered to exhibit the same to plaintiff's counsel, and furnish a copy thereof, which offer was declined, and defendant denies the allegation that plaintiff was unable to set forth the contents of such application in his bill.

Defendant also alleges that the original application is filed as an exhibit with its answer, which shows how the insurance provided by the contract was distributed, and by which it was understood and agreed that, in the event

of loss, the defendant should not be liable for an amount greater than three-fourths of the actual cash value of the property covered by the policy at the time of such loss; also alleging that the second section of said policy provides that "this entire policy is void if any statement contained in such application, plan, survey, or description be untrue, or if the assured is not the sole and unconditional owner of the entire property, or if any building intended to be insured stands upon grounds not owned by both a legal and an equitable fee-simple title by the assured, or if the interests of the assured in the property be not truly stated herein, or if the property or any portion thereof be incumbered by any mortgage, deed of trust or lien." Respondent also says that said application so made and signed by complainant contained the following question: "State the nature of your title, whether fee simple, leasehold, or by bond or agreement. If others are interested, give name, interest, and value;" to which the answer by complainant was, "Fee simple." Respondent further alleges that at the time of making said application and issuing the policy of which it was apart, the assured was not the sole and unconditional owner of the entire property; that the building intended to be insured by said policy stood on ground not owned by either a legal or equitable fee-simple title by complainant; that the interest of the assured in said property was not truly stated in the policy, etc.; that the assured, at the times aforesaid, owned only one undivided one-third of the real estate on which was the property insured; that the warranty in that behalf contained in said application was broken, and by reason of the facts aforesaid, and the provision of the second section of said policy, the entire policy was and is void. Respondent further says the said application contained this question: "What incumbrance, if any, is now on said property?" to which the assured made answer in writing, "None." Respondent then proceeded to set forth certain judgment liens and incumbrances on said real estate mentioned in said policy, and further alleged certain misrepresentations and concealments as to the ownership and value, situation, and condition of said property, which it claimed rendered said policy void; also that at the time said policy was issued a chan-

cery suit was pending to enforce certain liens upon said real estate, and that a decree was rendered, after the issuance of said policy, to sell the land, and that in August, 1894, the said land and building were sold under said decree, and were purchased by plaintiff himself, by reason whereof the said policy became void; also, that on or about September 4, 1895, the plaintiff made a written statement, signed and sworn to by him, setting forth that there had been no change in the title, use, occupancy, location, possession, or exposure of said property since the policy was issued, whereas the fact was that the title to said property had been changed since the policy was issued, by the decrees and sale by the chancery suit aforesaid, which was an attempt at fraud by the assured by false swearing, causing a forfeiture of all claims under said policy. The defendant calls for proofs as to the alleged destruction of the policy by fire, and denies that the insured property was destroyed by fire.

The plaintiff filed a special replication to said answer, in which he alleges that in fact no application, plan, or survey of the property described in said policy mentioned in said answer was made by plaintiff in procuring said insurance, but that the agent of the Jefferson Insurance Company made an inspection of the premises, and took from him an application to said company for a policy of insurance, being the same application filed as Exhibit A with the defendant's answer, but which has been materially altered since it was signed by plaintiff, without his knowledge or consent, and is, therefore, no part of the policy of insurance sued on in this cause, said application having been made to an entirely separate and distinct company; that he made no representations to the defendant company or its agents concerning the title or condition of said property, or of his interest therein, or as to any incumbrances thereon at the time of procuring said policy, or any other time, but that, if the court should hold that the application filed as Exhibit A with the defendant's answer should be treated as an application to the defendant for the said policy, then plaintiff said that he did truly and correctly state to said agent the condition of his title to said property and his interest therein, also the existence of the liens referred to in the an-

swer, but that said agent did not correctly and fully write down plaintiff's answers to said questions fifteen and seventeen, respectively, in said application to the Jefferson Insurance Company, filed as Exhibit A with defendant's answer, and therefore he is not bound by such answers; that the policy sued on had no provision therein, as is set out in said application, reciting that the defendant was not to be liable for a greater amount than three-fourths of the actual cash value of said property at the time of such loss, but recited as follows: "Provided, that no claim for loss shall exceed in any event the sum or sums insured, nor the interest of the assured in the property, nor the actual value of the property immediately preceding the fire, which cash value should in no case exceed what would then be the cash cost to the assured of repairing or replacing, and the company should have the option of rebuilding, repairing, or replacing the property by giving notice of their intent so to do within thirty days after proof of loss shall have been received." Plaintiff further says that the said policy contains the contract between the plaintiff and the defendant as to amount of insurance to be paid in the event of loss, and denies that the same provided that the defendant should be liable only for three-fourths of the value of the property destroyed; that, if the court holds that said application filed as Exhibit A is a part of the policy of insurance, then that the said three-fourths clause therein does not constitute a contract between them; said contract having been wholly prepared by the defendant subsequent to said application reciting the agreement above quoted, and accepted by plaintiff with said clause therein, becomes and is binding on defendant as its contract, and so plaintiff says the defendant is not entitled to take advantage of the representations, conditions, or statements contained in said application. The plaintiff also filed an amended bill, in which he alleges that at the time of filing his original bill, and when defendant's answer was filed, he was under the impression that he had made an application to the defendant for said policy, and that he had signed a written or printed application therefor, which was turned over to the company's agent, and made an allegation in his bill to that effect; but since filing said application with its answer

on the  day of taking .the depositions in the  cause  he has discovered  for the  first time  that he  was  mistaken as to having made such written or printed application to the defendant for the  said policy; that on seeing  the application his memory was refreshed with reference there+o, and the fact is he never  made any  application to  defendant company, either written or  printed, for  said policy, but  made application for  same to the  Jefferson Insurance  Company on said  property, which is the same application filed  with the defendant's  answer, except that the same has been altered since  it was signed by plaintiff  and delivered  to defendant's agent, in  this:   that  the  word "Franklin" has been written  over  the  word  "Jefferson"  in  blue  pencil since its delivery to said agent, which alteration was made without the knowledge or consent or authority of plaintiff. He further  says that  no  application, plan, survey, or  description of the property insured was made to  the defendant in procuring  the insurance under the  said policy recited in the original bill, but that said policy was issued to the plaintiff without any written or printed application being made by him therefor.

The defendant objected to  the filing of said amended bill.   The objection  was overruled, and thereupon the defendant  demurred to said amended bill.   The demurrer was overruled, and  the defendant filed its  answer to said amended bill, denying the material allegations thereof.   A portion of the facts were agreed, depositions taken by both plaintiff and  defendant, and a final  decree was  entered in the cause on  the 29th of  August, 1898, holding  that the plaintiff was entitled to the  relief prayed for, and decreeing that  he recover  from the  defendant  the sum of two thousand  one hundred and  four dollars and  eighty cents, principal and  interest to that date, and  costs.   From this decree the defendant obtained this appeal.

The first error assigned is that  the court erred in overruling the  defendant's demurrers, the defendant insisting that  no decree should have been rendered against it  upon the plaintiff's  bill for any  amount, jurisdiction in equity having been claimed on the ground that the policy sued on had been lost or destroyed.   In support of the demurrer it is claimed that  by the  terms of the policy the assured's

application was made part of the policy, and should have been so stated in the bill. The plaintiff denies in his amended bill that he made any application whatever to the Franklin Company, but says he did apply to the Jefferson Company for a policy of insurance; that said policy was prepared by the Jefferson Company's agent, and signed by plaintiff; and it appears that after the policy left the hands of the agent, Lowe, with whom he was dealing, the name "Jefferson" was struck out, and "Franklin" inserted in its room and stead. In his deposition plaintiff was asked: "State whether or not you ever made or signed any written application to the Franklin Insurance Company, of Wheeling, West Virginia, the defendant in this case, for the policy of insurance sued on," and answered, "I did not." The agent, Lowe, in his deposition, states that he had some blank applications of the Peabody Insurance Company, that plaintiff seemed to prefer the Jefferson Company, and he struck out the name "Peabody," and inserted "Jefferson" in the application. It appears that after the application left Mr. Lowe's hands the name "Jefferson" was struck out, and "Franklin" written above it by some person unknown to either plaintiff or Lowe. Now, as to the effect of this alteration without the knowledge or consent of plaintiff, it is held in *Newell* v. *Mayberry*, 3 Leigh 250, that: "If a written agreement not under seal be altered by the party claiming under it in a material part, he can never recover upon the agreement so altered, nor can he avail himself of the contract in its original and true form. There is no distinction between deeds and other written instruments in this respect." It is clear that an application to the Jefferson Insurance Company for an insurance policy can in no sense be held or considered as an application to the Franklin Insurance Company for a like policy. See 2 Am. & Eng. Enc. Law (2d Ed.) 187. What is the result if this application be relied on by the defendant, which was never made by the plaintiff to the defendant, but was made to another and different company, and thus materially altered without his knowledge or consent? The agent, Mr. Lowe, when asked how the word "Franklin," in blue pencil, came to be written over the word "Jefferson," answered: "I don't know as I can answer as to

why it was done, only as I would presume that it was done by the agent. It has been done by parties other than myself. I did not do it." This same witness says: "After I had mailed the application to the agent, Mr. Cleavenger asked me why it was they had written him in the Franklin instead of the Jefferson, and I told him that sometimes when one company would not accept a risk, it was passed over to another by the agent, and was accepted by another company, and I supposed this was the case with this application, and told him at the time that I considered the Franklin just as good as the Jefferson, or Peabody, either. He seemed to be satisfied with it, and I never heard anything more in regard to the policy." Can we say that this constituted a ratification of the action of the agent of said company in changing an application to the Jefferson into an application to the Franklin, in the absence and without the consent of the plaintiff? The witness says he seemed to be satisfied with it, but, so far as the evidence discloses, he was silent. Can this application, altered in this material manner, be read or considered as part of this policy? I think not. In its present form it was never signed by John C. Cleavenger, nor did he apply to the Franklin Insurance Company. In *Harvey v. Insurance Co.*, 37 W. Va. 273, (16 S. E. 581) (Syl., point 8), it is held that: "Where a policy of fire insurance is issued without any written application on the part of the assured so far as the facts appear, the assured, in offering in evidence the policy, is not required to read with it as part thereof a written application produced by the insurer, without proof that it was signed by the assured or the agent of the assured." And in point 9: "When a clause in a policy refers to an application relating to warranties, misrepresentations, and concealments, and assumes to make such paper a part of the policy, and no such paper is shown, the clause which refers to it, and attempts to prescribe its place and effect as part of the contract, and to determine the consequences of misstatement, must be regarded as inapplicable to the facts of the case, and therefore nugatory." See *Insurance Co. v. Peck*, 133 Ill. 221, (24 N. E. 538).

Without proceeding further with the discussion of the case on its merits, it is proper to look to the demurrer in-

terposed by the defendant to the plaintiff's bill, the action
of the court in overruling which is assigned as first ground
of error.   The defendant claims that the plaintiff is not
entitled to relief in equity, and that he had a plain, com-
plete, and adequate remedy at law.   Now, as before stated,
the bill alleges that the plaintiff is unable to produce or file
in any suit or action said original policy issued by defend-
ant, or a copy thereof, because the same has been lost or
destroyed without the fault of plaintiff; and though he had
made diligent search for said policy, he failed to find it,
and verily believes the same was destroyed by fire at the
time of the destruction of the premises.   On this point this
Court held in *Yates* v. *Stuart's Adm'r*, 39 W. Va. 124, (19
S. E. 423), that "courts of equity have jurisdiction where a
lost instrument is set up, and the discovery sought in rela-
tion thereto is material to the relief."   HOLT J. delivering
the opinion of the Court, said (page 135, 39 W. Va., and
page 427, 19 S. E.) : "It is well established that equity has
jurisdiction where a lost instrument is to be set up, espe-
cially where discovery is necessary, notwithstanding
courts of law now exercise jurisdiction in the same cases;
and that in such a case a court of chancery, having taken
jurisdiction for one purpose, will adjudicate the whole
merits of the case,"—citing *Hickman* v. *Painter*, 11 W. Va.
386; *Mitchell* v. *Chancellor*, 14 W. Va. 22.   See, also,
*Nease* v. *Insurance Co.*, 32 W. Va. 283 (9 S. E. 233), (Syl.,
point 1), where it is held that "a doubtful or partial rem-
edy at law does not exclude the injured party from relief
in equity."

The next cause of demurrer assigned is that the plain-
tiff's bill does not set forth the assured's application and
survey, which, by the terms of the policy, is made a part
thereof, and a warranty by the assured; nor show that the
plaintiff has made any effort to ascertain the contents of
the application, or that it is necessary to proceed by this
bill to obtain information of said contents.   While it is true
that plaintiff recites that at the time he applied for said in-
surance policy he signed a written or printed application,
which was turned over to the agent, but that after the fil-
ing of said original bill he ascertained that he was mis-
taken in this matter, and that he never made any applica-

tion, written or printed, to the defendant, for said insurance, which fact caused him to file his amended bill, thereby correcting his mistake alleging that he had signed such written application, and denying positively that any application was made by him to defendant in procuring the insurance under said policy, the testimony in the cause sustains this allegation of the amended bill. Now, the fact being that no such application was made by plaintiff to defendant for said policy, it could not have been stated as part of the policy in the bill, and we must regard this assignment of error as not well taken. As to the effect of the alteration of this application 1 Greenl. Ev. (15th Ed.) § 565 says: "Though the effect of the alteration of a legal instrument is generally discussed with reference to deeds yet the principle is applicable to all other instruments. The early decisions were chiefly upon deeds, because almost all written engagements were anciently in that form; but they establish the general proposition that written instruments which are altered in the legal sense of that term are thereby made void. The grounds of this doctrine are twofold. The first is that of public policy to prevent fraud by not permitting a man to take the chance of committing a fraud without running any risk of losing by the event when it is detected; the other to insure the identity of the instrument and prevent the substitution of another without the privity of the party concerned." The facts stated in the amended bill present additional ground for equity jurisdiction. As to the action of the court in overruling the objection to the filing of the amended bill and the demurrer thereto, it has been held in this Court in several cases that amendments of this character may be made, provided the identity of the cause of action is preserved. See *Lamb* v. *Cecil*, 28 W. Va. 633; *Kuhn* v. *Brownfield*, 34 W. Va. 252, (12 S. E. 519); *Bird* v. *Stout*, 40 W. Va. 43, (20 S. E. 852). This record shows that Cleavenger signed an application to the Jefferson Insurance Company for an insurance policy on his residence and its contents; that he paid the premium, and delivered the application to Lowe, the agent of said company, who says he mailed it to W. S. McKay, the agent at Ravenswood; but when, and by whom, the same was changed in inserting the name "Franklin" in

place of the name "Jefferson" does not appear. This policy, then, was issued by the Franklin Company without any application therefor signed by the assured. In such cases the law is thus laid down in *Insurance Co.* v. *Rodefer*, 92 Va. 747, (24 S. E. 393): "If an insurance company elects to issue its policy of insurance against a loss by fire without any application, or without any representation in regard to the title to the property to be insured, it cannot complain, after a loss has ensued, that the interest of the insured was not correctly stated in the policy, or that an existing incumbrance was not disclosed." Also, that "a condition in a fire insurance policy, which avoids it if the interest of the insured in the property be other than 'unconditional and sole ownership,' is not broken by the existence of a mortgage on the property at the date of the policy. The condition does not refer to the legal title, but to the interest of the insured, and is not a warranty against incumbrances." To the same effect, see *Wolpert* v. *Assurance Co.*, 44 W. Va. 734, (29 S. E. 1024). The plaintiff, having filed no application, and made no representation to the Franklin Company as to the character of his ownership of the insured property or the liens thereon, cannot be affected by representations made to any other company. In the case of *Gerling* v. *Insurance Co.*, 39 W. Va. 690, (20 S. E. 691), this Court held that: "A policy of fire insurance has a clause which provides that, unless otherwise provided by agreement indorsed thereon or added thereto, it shall be void if the subject of the insurance, whether real or personal property, or any part thereof, be or become incumbered by mortgage, trust deed, judgment, or otherwise, that judgments recovered in *invitum* against the insured during the life of the policy and before loss are not incumbrances within the meaning of the policy." It is an agreed fact that Cleavenger at the time the said policy was issued had a legal and equitable fee-simple title to the undivided eleven-twelfths of the tract or parcel of land containing two hundred and seventy-five acres, in Roane County, on which the buildings to be insured stood, and that said buildings were erected at his expense. It is further shown by the evidence that plaintiff had the equitable title to the remaining one-twelfth, having a parol contract,

made about November 30, 1880, with his brother, B. M. Cleavenger, whereby plaintiff was to support his brother during his life in consideration for his said interest, which contract has been fully performed, possession taken, and improvements made since the date of contract, and plaintiff is entitled to a deed therefor. . See *Middleton* v. *Selby*, 19 W. Va. 168. By what legal intendment can a party procuring an insurance policy, and making application therefor to one company, be made an applicant to another and different company, simply because an agent, in the absence of the applicant, and without his consent, inserts the name of the latter company in the application; or be bound to such other company by the representations made in such application?

A discrepancy appears between the application filed with the defendant's answer and the policy. In the former three-fourths of the value is to be paid in the event of a loss, while in the latter it shall not exceed the cash value immediately preceding the fire, which would strongly indicate the absence of the application when the policy was prepared, or an attempt to furnish an application after the policy had been issued. But, be this as it may, there being no legal application in this case, the terms and conditions of the policy would prevail. In the case of *Chandler* v. *Insurance Co.*, 21 Minn. 85, it is held that: . "The rule that words are to be taken most strongly against the party using them, is more applicable to the conditions and provisos of policies of insurance than to almost any other instruments. These policies are wholly prepared by the company issuing them, and should be drafted with the most scrupulous exactness. They should be absolutely free from ambiguity. A policy ought to be framed that he who runs can read. It ought to be framed with such deliberate care that no form of expression by which, on the one hand, the party assured can be caught, or by which, on the other, the company can be cheated, shall be found upon the face of it," citing *Anderson* v. *Fitzgerald*, 4 H. L. Cas. 484, 510, and many other authorities. In *Miller* v. *Insurance Co.*, 12 W. Va. 117, it was held that in the interpretation of a policy of insurance in all cases it must be liberally construed in favor of the insured, so as not to

defeat, without necessity, his claim to the indemnity, which, in making the insurance, it was his object to secure; and, when the words are without evidence susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted.

It is claimed that by reason of the fact that said land was sold under a decree of the court, the policy was thereby forfeited. This decree, however, was rendered April 3, 1895, after the policy was issued, but before the loss occurred, was in *invitum*, and the sale under it took place after the loss; and these facts would not avoid the policy. See *Nease* v. *Insurance Co.*, 32 W. Va. 283, (9 S. E. 233), and *Gerling* v. *Insurance Co.*, 39 W. Va. 690, (20 S. E. 691), *supra*.

Proof of loss was not necessary when payment had been refused on other grounds. *Deitz* v. *Insurance Co.*, 33 W. Va. 544, (11 S. E. 50); *Shepherd* v. *Insurance Co.*, 21 W. Va. 368.

In my view of this case, the representations made by the insured in his application to the Jefferson Company can have no consideration in determining the validity of the policy, and the evidence in the record discloses no fact that would prevent the plaintiff from recovering upon said policy the amount of the loss sustained by him. The decree is therefore affirmed.

*Affirmed.*