# CHARLESTON.

MEDLEY *v.* GERMAN ALLIANCE INSURANCE CO.

Submitted February 10, 1904—Decided March 15, 1904.

1.   INSURANCE AGENT—*Contract—Laches.*

An insurance company, establishing a local agency, is responsible to the parties with whom the agent transacts business for his acts and declarations within the scope of his employment, and to the extent of the authority apparently conferred upon him by the company, and a limitation upon such apparent authority, not communicated to the insured before he acted upon the representations or conduct of the agent, will not relieve the company from liability, unless, after discovery of the want of authority in the agent, the insured has precluded himself from the assertion of his rights by *laches.* (By three judges.)   (pp. 352, 353).

2.   INSURANCE COMPANY.—*Liability of.*

When an insurance agent, entrusted with blank policies and authorized to fill up, countersign and deliver them, is correctly informed, by the person whose property he undertakes to insure, as to the state of the title and other facts material to and affecting the inception of the contract, so far as inquiry is made respecting them, and takes no written application for the insurance, and then issues a policy embodying, as warranties therein, facts different from those which were given to him by the insured, the company is estopped from defending a claim for loss under the policy on the ground of such false recitals, unless it is shown that the insured has prior or contemporaneous notice of want of authority in the agent to waive conditions. (By three judges.)   (p. 357).

3.   INSURANCE CO.—*Contract.*

A contract in writing is presumed to be the embodiment of an antecedent verbal agreement, and, upon clear and full proof, that the person who undertook the preparation of it has, by mistake or fraud, written the contract different from what it was as made by the parties, it may be reformed in equity, and where such departure occurs in a policy of insurance prepared by an agent of the company, it raises an equitable estoppel against the company which may be effectually asserted by the insured in a court of law, unless he had notice of want of authority in the agent to waive the conditions at all or except in a specific manner.   (By three judges.)   (p. 359).

4.   INSURANCE POLICY.—*Contract.*

A clause in a policy of insurance so limiting the authority of

the agent is not notice to the insured of the agent's want of power to bind his principal in respect to transactions had between them before the policy was delivered, such as will prevent a reformation of the contract at the instance of the insured, or preclude him from relying upon a waiver of conditions by the agent, made prior to the issuance of the policy. (By three judges.) (p. 361).

5. INSURANCE POLICY.—*Laches*.

Failure to read a policy of insurance within a short time after its delivery is not such neglect or *laches* as will preclude the insured from having a reformation of it or deprive him of the benefit of a waiver by the company through its agent, unless some fact was known to him sufficient to put him on inquiry as to whether it had been correctly written or contained a limitation upon the powers of the agent (By three judges.) (p. 361).

6. INSURANCE POLICY—*Agent*.

Restrictions inserted in a policy of insurance upon the power of the agent to waive any conditions except in a particular manner, as by indorsing the waiver on the policy, do not apply to those conditions which relate to the inception of the contract. (By three judges.) (p. 363).

7. INSURANCE POLICY.—*Agent—Limitation*.

As to promissory warranties, conditions for the violation of which the policy is rendered non-effective after it has become effective and operative, such limitation clause is not only notice to the insured of want of authority in the agent to waive them, but also a stipulation between the parties that the agent has not, and shall not have, any such power. (p. 365).

8. INSURANCE POLICY.—*Sale of Property—Notice*.

Notice of sale of the insured property under a deed of trust, served upon the insured before the occurrence of the loss, precludes recovery when the policy contains a stipulation that, unless otherwise provided by agreement endorsed thereon or added thereto, it shall be void, "if, with the knowledge of the insured, foreclosure proceedings be commenced or *notice given* of sale of any property covered by this policy by virtue of any mortgage or trust deed," together with a clause inhibiting the agent from waiving such condition otherwise than by an agreement so endorsed or added, and no agreement waiving the condition as to commencement of foreclosure proceedings and notice of sale is so endorsed or added, unless the forfeiture is waived by the company or the agent *under authority therefor conferred by the company*. (p. 369.)

9.  PROMISSORY WARRANTY—*Forfeiture.*
    Forfeiture for breach of a promissory warranty is not waived by retention of the premium after notice thereof. (p. 367).

10. INSURANCE POLICY.
    Under such a policy having a slip attached thereto by the agent, saying among other things, "$————. Other Concurrent Insurance permitted," additional insurance on the property will not prevent recovery for loss on the policy. (p. 366).

11. INSURANCE CO.—*Liability.*
    Denial by an insurance company of its liability on other grounds, within the time allowed for furnishing preliminary proofs of loss, is in law a waiver of the conditions of the policy requiring such proofs. (p. 366).

12. INSURANCE POLICY.—*Fraud.*
    When, by the provisions of a policy, it shall be void in case of fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof, false swearing, in order to defeat recovery, must be intentional and done for the purpose of defrauding the insurer. (p. 365).

Error to Circuit Court, Kanawha County.

Action by Lucy A. Medley against the German Alliance Insurance Company. Judgment for plaintiff, and defendant brings error.

.                                                        *Reversed.*

WATTS & ASHBY and CHILTON, MACCORKLE & CHILTON, for plaintiff in error.

A. W. MCDONALD; BROWN, JACKSON & KNIGHT; LINN, BYRNE & CATO, and A. B. LITTLEPAGE, for defendant in error.

POFFENBARGER, PRESIDENT:

The German Alliance Insurance Company complains of a judgment of the circuit court of Kanawha County, rendered against it and in favor of Lucy A. Medley, for the sum of $1,732.00 in an action of *assumpsit* upon a policy of insurance upon a dwelling house and personal property therein for the sum of $1,500.00; alleging that the court erred in overruling its motion to exclude the plaintiff's evidence, made at the conclusion thereof, and its motion to exclude all the evidence and direct a verdict, made after all the evidence had been intro-

duced; in giving to the jury five several instructions and each of them; in refusing to set aside the verdict; and in entering judgment thereon.

One of the principal defenses to the action. raised by a proper plea, and which forms the subject matter of instructions given and refused, is the alleged breach of a condition of the policy which reads as follows: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple." No such provision was endorsed on the policy. Mrs. Medley's title to the land on which the building stood is evidenced by a deed by which the Kanawha Valley Bank, a corporation, "doth grant and convey unto" her the lot (describing it), and which contains, in the *habendum* clause thereof, the following: "And it is fully understood and agreed between all of the parties herein interested that the said lot of land is hereby conveyed by the parties of the first part to the party of the second part for and during her lifetime and at and after her death the title to the said lot is to pass unto and vest in her children born and unborn." No written application for the policy was made. The contract of insurance was effected by Thomas Popp on behalf of the company as its agent and G. W. Medley, the husband of the plaintiff, as her agent. The insurance was solicited by the company through Popp, who inquired of Medley, before issuing the policy, as to the person in whose name the deed was, in response to which Medley said: "The deed is deeded to my wife and her heirs, born and unborn." George Medley, a son of the insured, says his father told Popp the property was deeded to his mother and her heirs, and also that there was a lien upon it by deed of trust for three hundred dollars in favor of Ben Baer. Both father and son say the agent inquired, not as to the estate or interest of Mrs. Medley in the property, but as to the name of the person to whom it was deeded. Popp's testimony was not taken.

The policy contained the following additional clause, limiting the authority of the agent: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as

may be endorsed hereon or added hereto, and no officer, agent or other representative of these companies shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In *Wolpert* v. *Northern Assur. Co.*, 44 W. Va. 734, this Court held that: "If an insurance company elects to issue its policy of insurance against a loss by fire without any regular application, or without any representation in regard to the title to the property to be insured, it cannot complain, after a loss has occurred, that the interest of the insured was not correctly stated in the policy, or that an existing incumbrance was not disclosed." Said case follows the decision in *Insurance Co.* v. *Rodefer*, 92 Va. 747. The principle was again applied in *Cleavenger* v. *Franklin Insurance Co.*, 47 W. Va, 595. In that case, at page 608, JUDGE ENGLISH, delivering the opinion of the Court, says: "This policy then, was issued by the Franklin Company without any application therefor signed by the assured. In such cases the law is thus laid down in *Insurance Company* v. *Rodefer*," and then quotes the syllabus in that case as above given.

This is consistent with, and logically results from, other principles of insurance law several times announced by this Court one of which is that the agent of an insurance company, in preparing, or directing the preparation of, an application for insurance, acts for his company, and not for the applicant. He is the agent of the company and not the agent of the applicant, and, in what he does, binds the company and not the applicant, if he acts improperly. "Though the weight of the modern authorities as well as reason in my judgment leads to the conclusion, that, where an application for a policy, which is filled up by an agent of an insurance company and signed by the insured on the faith, that it has been properly filled up, who has not read the application, though he had an opportunity to do

so, if none of the false answers were given by him but were inserted by the agent of the insurance company either fraudulently or by mistake, where the mistake was not the result of anything said or done by the insured, the insured or assured is not bound by such false answers inserted in the application, but these answers should be regarded as the act of the insurance company by its agent and not as the act of the insured. It is true this position is still controverted by respectable authorities. * * * * But outside of Massachusetts the weight of authority now seems to be in favor of the position, that under circumstances above stated false answers in the application for an insurance will not forfeit the policy; and I concur in this view." Green, Judge, in *Schwarzbach* v. *Insurance Co.*, 25 W. Va. 622, 663. This view is embodied in point 12 of the syllabus of said case. The same doctrine is re-iterated in *Deitz* v. *Insurance Co.*, 31 W. Va. 851, and it is incorporated in point 3 of the syllabus of that case together with the further declaration that, "This rule is not changed by a stipulation inserted in the policy *subsequently issued*, that the acts of such agent in making out the application shall be deemed the acts of the insured."

It is denied, however, that this law is applicable to the case in hand for the reason that the policy contains a clause, limiting the power of the company's agent to waive conditions of the policy. As the policy was delivered into the hands of the insured with this clause plainly printed in it, it is said that she had notice of it, and was bound to know, whether she read the policy or not, that the agent had no power to issue a policy upon any other conditions than those stated in it. It is difficult to see any solid ground for this distinction. In the Deitz case, the policy, when put in the hands of the insured, said that if the property was held in trust or on commission or by leasehold, or other interest, not amounting to absolute and sole ownership, it must be so represented to the company and expressed in the policy in writing, else the insurance as to such property should be void, and that if, through the agent, any misrepresentation as to the title to the property or any other matter, had been made, the agent should be deemed to be the agent of the insured, and not of the company, and further, that the company should "not be bound by any act of or statement made to or by, any agent or other person," which was not contained either on the policy or in the

written application upon which the insurance or any renewal thereof was based. How could the company have chosen and put into its policy words more emphatically denying to its agent the power to bind it by any word or act outside of the written matter contained in the application for the policy? For the very reason that the company had so attempted to limit the authority of its agent in respect to matters preceding the issuance of the policy in the negotiation of the contract, this Court virtually declared that clause of the policy void, or, at least, that the clause in the policy subsequently issued was not notice to the insured of the limitation of the agent's authority. In that case, the policy was issued to a husband on a building belonging to his wife and the court held the insurance company bound to pay the loss, notice of want of authority apparent on the face of the policy, (if it be notice), to the contrary notwthstanding. In *Cleavenger* v. *Franklin Insurance Co.,* 47 W. Va. 595, the interest of the insured was different from that stated in the policy, and the policy declared that if it were different, the policy should be void. Whether it contained any clause concerning the authority of the agent does not appear. In *Wolpert* v. *Northern Assur. Co.,* Judge English said: "It appears that the plaintiff in this case is illiterate, cannot read a word of English, and had to rely on the insurance agents in taking out the policy. No questions appear to have been asked him in regard to the deed of trust, and it does not appear that the conditions of the policy were read or made known to him, and no concealment appears to have been made by the plaintiff. It was simply an omission by the agent to inquire in reference to liens on the property which was not the fault of the plaintiff, and, looking at the entire case as presented by the record, I do not think the court erred in refusing to set aside the verdict, and award a new trial, and in entering judgmemnt."

This doctrine was applied also in the case of *Coles* v. *Jefferson Insurance Co.,* 41 W. Va. 261, the syllabus in which says: "A provision in the application or in the policy making him the agent of the insured and not of the company cannot change his legal status as agent of the company, or the law of agency, if he is in fact the agent of the latter." This seems to be an extension of the principle, and to hold that a limitation of authority in the printed application is not binding upon the insured. In the

opinion, JUDGE HOLT says: "This rule is not affected or changed by a stipulation inserted in the policy subsequently issued, that the acts of such agent in making out the application shall be deemed the acts of the insured, unless written in the application or expressed in the policy."

These decisions are founded largely upon that of the Supreme Court of the United States in the case of *Insurance Co.* v. *Wilkinson,* 13 Wall. 222, in which Mr. Justice Miller, delivering the opinion, said: "If, however, we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations, and was told by the plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement, would be an act of bad faith and of the grossest injustice and dishonesty. And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract; and that it was made by the defendant, who procured the plaintiff's signature there to. * * * It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argument being that, as to all other acts of the agent, he is the agent of the assured. This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon. But to apply such a doctrine, in its full force to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims. The tendency of the modern decisions in this country is

steadily in the opposite direction. The powers of the agent are, *prima facie,* coextensive with the business intrusted to his care and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

But this is said not to be applicable to the case in hand, for the reason that notice of the agent's want of authority to waive conditions was not brought home to the applicant in that case. It is also said that a limitation in the policy is notice, although the policy is prepared by the insurance company alone in pursuance of a prior verbal agreement to which it ought to correspond, and to which it will be made to conform in equity, upon proof of the fraud or mistake on the part of the agent of the company which resulted in the incorrect preparation of the policy. It is further said that subsequent decisions of the Supreme Court of the United States, as well as some prior to that of *Insurance Co.* v. *Wilkinson,* are authority for the position that the limitation clause in the policy is notice. One of these is *Carpenter* v. *Providence-Washington Insurance Co.,* 16 Pet. 495, but it is to be noted that the statement of that case contains this recital: "Annexed to the policy are the proposals and conditions on which the policy is asserted to be made, and among them is the following: 'Notice of all *previous* insurance upon property insured by this company shall be given to them, and endorsed on the policy, or otherwise acknowledged by the company in writing, at or before the time of their making insurance thereon, otherwise the policy made by this company shall be of no effect." That was a paper exhibited to the insured by the company before the policy was issued, imparting to him information of the only conditions upon which a contract could be made, and was therefore direct and positive previous notice. Moreover, it was, in legal effect, notice of want of authority of the agent to make any other kind of a contract. Another is *Insurance Co.* v. *Fletcher,* 117 U. S. 559, which the court distinguished from the case of *Insurance Co.* v. *Wilkinson,* saying: "Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was

required to make and sign, and which, as we have stated, he must be presumed to have read. He is, therefore, bound by its statements." Observe that this was prior, not subsequent, notice. Another is *Insurance Co.* v. *Wolf,* 95 U. S. 326. The condition for the breach of which the policy in that case was forfeited was a subsequent one, and notice in the policy of the limitation of the agent's authority was prior notice. It provided that removal to, and residence in, certain prohibited sections of the country, by the insured, should forfeit the policy. Another is *Insurance Co.* v *Norton,* 96 U. S. 234, but the condition violated in that case was one subsequent, and not prior, in its nature. Another one is *Assurance Co.* v. *Building Ass'n,* 183 U. .S. 308, relied upon by this Court as authority for the decision in *Maupin* v. *Insurance Co.,* 53 W. Va. 557, 45 S. E. 1003, and it does actually decide as follows: "Where fire insurance policies contain provisions whereby agents may, by writing endorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power. Where such limitation is expressed in the policy, the assured is presumed to be aware of such limitation." This much of the decision is based upon the prior decisions of that Court hereinbefore referred to and explained, all of which are cases showing either that there was notice in the application prior to the issuance of the policy, or that the principle had only been applied to conditions in the policy, the violation of which subsequent to its issuance rendered it invalid and non-effective. Hence, it is clear that the doctrine has been extended in this last case to limits beyond those theretofore defining its application. This Court has said that subsequent notice of the agent's want of authority, contained in the policy, is not binding upon the insured as to representations made at the inception of the contract and in the verbal negotiations preceding the issuance of the policy. Moreover, at best, it is only presumptive, not conclusive nor actual, notice. In the case last cited, the Court says the assured is presumed to be aware of such limitation. And in *Insurance Co.* v. *Fletcher,* cited, Mr. Justice Field said only that the insured "must be presumed to have read" the limitation clause in the application. "In regard to waivers before issued, it is by no means clear that the construc-

tive notice supplied by provisions of a policy not yet in the hands of the applicant should be binding upon him. Prudent men are accustomed to rely upon the acts and statements of the agent, and they should be protected in so doing. Busy men have not time to study the interminable provisions of insurance policies. Only when the custom of limiting the authority of a general agent in the policy has become so general that it is a part of the ordinary business knowledge of the world that such provisions exist and are to be examined will it be proper to hold the applicant bound by them in respect to negotiations prior to the issue of the policy." May on Insur. section 137*a.*

A large number of the states hold, for one reason or another, that the limitation, expressed in the policy, of the authority of the agent, or prohibition of his authority to waive conditions, has no application to those conditions which relate to the making, or inception of, the contract, but only to conditions inserted in the contract as actually made and to be thereafter observed. "It seems to be the prevailing doctrine that the rule holding the company chargeable with the acts, declarations, or knowledge of facts of a general soliciting agent at or before the issuance of the policy, is not affected by clauses in the policy prohibiting waivers by agents or stipulating that the agent shall be the agent of the assured, where it is not shown that such limitations were brought to the knowledge of the assured." 16 Am. & Eng. Enc. Law (2 ed.) 948. "The restrictions inserted in the policy upon the power of the agent to waive any condition unless in a particular manner, as by indorsing the waiver on the policy, cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent has delivered it and received the premium with full knowledge of the actual situation. This doctrine has been applied to both general and soliciting agents." *Id.* 949. For this position, decisions by the courts of Georgia, Kentucky, Michigan, Missouri, New York, Pennsylvania, South Carolina, Texas, Wisconsin and West Virginia are cited, and there are others. It is the well settled law of Maryland, and it is apprehended that it is the law of New Jersey, if resort be had to a court of equity instead of a court of law. In the opinion, in *Insurance Co.* v. *Martin,*

41 N. J. L. 568, from which Mr. Justice Shiras, in *Assurance Co.* v. *Building Ass'n*, cited, quotes at great length, it is said: "The cases usually cited for the proposition that a contract of·insurance is accepted out of the class of written contracts with respect to the admissibility of parol evidence to vary or control the written contract, will be found on examination to be, to a large extent, those in which the proof has been received with a view to a reformation of the policy in equity, or to meet the defense that the contract was induced by false and fraudulent representations not embodied in the contract, or are the decisions of courts in which the legal and equitable jurisdictions are so blended that the functions of a court of equity have been transferred to the jury box." So in *Dewess* v. *Manhattan Ins. Co.*, 35 N. J. L. 366, from which Mr. Justice Shiras quotes also at considerable length, the court say: "But, it is said, the agents of the defendants who procured this contract were aware that the real contract designed to be made was, that the plaintiff might apply the premises to this use. This knowledge of the agent of the defendants, and which, it is contended, will bind the defendants, is to have the effect to vary the obligations of the written contract. Upon what principle can this be done? There is no pretense of any fraud in the procurement of this policy. The only ground that can be taken is, that the agent, knowing that the premises were to be, in part, used as a stable, should have so described the use in the policy. The assumption is, and must be, that.the warranty, in its present form, was a mistake in the agent. But a mistake cannot be corrected, in conformitory with our judicial system, *in a court of law. No one can doubt that, in a proper case of this kind, an equitable remedy exists.*" So it appears that the only trouble in New Jersey as to this power, of waiver, is the selection of the proper forum in which to assert it. You cannot have it in a court of law but you may have it in a court of equity. In this State, no such difficulty exists. This Court has not been turning the assured round to a suit in equity to have reformation of his contract. *Travis* v. *Insurance Co.*, 28 W. Va. 583; *Deitz* v. *Insurance Co.*, 33 W. Va. 526; *Coles* v. *Insurance Co.*, 41 W. Va. 261; *Wolpert* v. *Insurance Co.*, 42 W. Va. 647; *Wolpert* v. *Insurance Co.*, 44 W. Va. 734. These cases were in *assumpsit*, which is held to be an equitable action

at law, and, in them, the principle of equitable estoppel was applied and the same result speedily and inexpensively reached that would have been attained by a suit in equity to reform and enforce the contract. *Croft* v. *Hanover Insur. Co.*, 40 W. Va. 508; *Cleavenger* v. *Insurance Co.*, 47 W. Va. 595. Even in Massachusetts, where conditions and warranties in policies of insurance are enforced to the very letter, the jurisdiction in equity to reform a policy on the ground of mistake or fraud is admitted. *Washburn* v. *Insurance Co.*, 144 Mass. 175.

The following illustrations of the exercise of equity jurisdiction are given by May on Insur. 4 Ed. section 566*a.*: "An error in a policy may be corrected by the memorandum of the agreement or by the application marked 'accepted' over the initials of an officer of the company. If by mistake of the agent a policy is issued in wrong form or with errors, equity will reform it even after a loss. A mistake brought about by wrong information given by the agent of the company, he being a lawyer, by which the policy was issued in the name of the mortgagor instead of the mortgagee, will ground a bill for reformation. Where the agent fails to state the interest that is intended to be insured, the policy will be reformed. If a policy differs from the memorandum, the policy will, by equity, be made agreebale to the memorandum. Where the policy omits the name of the insured, and states sixty days as the term of insurance instead of a year, as agreed upon by the parties in the verbal contract which the policy was intended to embody, the policy will be reformed. Upon 'clear and convincing' evidence of mistake by one party and fraud by the other, or of mutual mistake so that the writing does not carry out the intention of either, equity will reform. When the insured by mistake inserted the name of another vessel than the one intended to be insured, the policy was reformd after loss. A policy issued in the wrong name, by mistake of the company's agent, may be rectified after loss, although the said agent signed the application with his own name for the applicant. When the insurer by mistake indorsed 'eight boxes,' &c., on the policy from a bill of lading given by the insured of a shipment, when in fact it was eighteen, which was not discovered until after loss, the policy was reformed. The rule that mistake must be mutual does not prevail where there is bad faith on

the part of the defendant, or where confidence was reposed in him, and he was intrusted with and assumed the preparation or completion of the instrument, in which wilfully or negligently he has omitted what had been clearly stated to him as the intent of the plaintiff, who relies on the defendant in the matter. When the insurance company was told that no charter of the ship was at hand and the insured did not know just where she would touch, but wanted a policy for the round trip which would cover everything; and when the company purported to give such a policy, but in fact limited it in opposition to the charter, when found, equity ordered a reformation of the contract. When circumstances indicate that a policy was intended to be issued for two months, and the premium was paid for that time only, and the policy was written for a longer time, equity will reform the policy on the company's request. If a certificate for two thousand dollars is, by mistake issued upon an agreement for a one thousand dollar policy, the company is entitled to have the document reformed."

If the terms of a policy are so unalterably and absolutely binding upon the assured, after its acceptance, upon the theory of notice, how is it possible that such jurisdiction exists and may be exercised in one forum or another in all the states? If that be true of policies of insurance, how is it possible that a deed or other instrument may be reformed and made to express the true verbal contract, which it is supposed to embody, upon the application of the party into whose hands they have been placed. The description in the deed may be altered and reformed so as to speak the truth upon the application of the grantee therein. *Bieler* v. *Dreher,* 129 Ala. 384. So a mortgage will be reformed in like manner upon the application of the mortgagee. *Houston* v. *Faul,* 86 Ala. 232. And the holder of a title bond is not precluded from having a rescission of his contract in equity for misdescription of the land. *Reese* v. *Kirk,* 29 Ala. 406. The only ground upon which this right of reformation can be denied is *laches.* How is the person into whose hands the policy of insurance is placed to know whether it has been drawn according to the verbal understanding of the parties, until after he has read it? Is he to reject it upon suspicion? Has he not the right to assume for the time being that it has been properly drawn? As a matter of

fact, is it not common knowledge that agents are relied upon to properly prepare the policies, and that they are scarcely ever critically examined before acceptance? There can be no notice until after the reading, and, after the acceptance of the policy, there can be nothing more than a sort of implied notice, and a court of equity will not hold the party guilty of *laches* for mere negligence to actually read the policy any more than it will in the case of a deed. Compare the case of a misdescription of a tract of land with the insertion of the complex and artificial terms of insurance policies, such as "unconditional and sole ownership," "fee simple title," and say whether a layman, especially an illiterate person, can be rightfully or legally subjected to a stricter rule in respect to them than he is in respect to a description of a thing with which he is perfectly familiar, or which he is obviously capable of fully comprehending.

"Where the plaintiff applied for a renewal on the same terms as the old policy, and the defendant promised to give it, and the plaintiff did not examine the new policy until after loss, when he found it different from the old one in a matter materially affecting his rights of recovery, it was held that he was not guilty of *laches,* having a right to presume the new policy to be like the old according to promise, and that the policy should be reformed. The length of time before the assured discovers the mistake in the policy is only important as evidence of the existence of such a mistake. There is no period short of the statute of limitations within which a man must discover such error. A plaintiff is not, by neglecting to read his policy, guilty of such *laches* as to bar him from seeking to have the policy reformed to agree with the contract he made. Where a suit on the policy has been brought within the period of limitation agreed on, a bill for reformation in aid thereof may be brought after the limit." May on Ins. 4 Ed. section 566.

It is upon these principles, well settled and fundamental in their nature, and not because of the desire to treat insurance companies different from other litigants, that the courts have enforced their contracts under the conditions of this case. Bearing them in mind and applying them to the facts, the following language from the New York Court of Appeals has noth-

ing of harshness or irregularity in it: "The restrictions insert-
ed in the contract upon the power of the agent to waive any
condition, unless done in a particular manner, cannot be
deemed to apply to those conditions which relate to the incep-
tion of the contract when it appears that the agent has deliver-
ed it and received the premium with full knowledge of the
actual situation. To take the benefit of a contract with full
knowledge of all the facts and attempt afterwards to defeat
it, when called upon to perform, by asserting conditions relat-
ing to those facts would be to claim that no contract was made
and thus operate as a fraud upon the other party." *Wood* v.
*Fire Ins. Co.*, 149 N. Y. 382. Nor has this language any
strange or unusual sound to one who has had his mind fixed
upon those principles: "The rule that an insurance company
will not be permitted to defeat a recovery upon a policy issued
by it by proving the existence of facts which would render it
void, where it had full knowledge of them when the policy was
issued, is too well established by the authorities in this State to
require further discussion. It is manifest that the facts in this
case bring it clearly within the principle of the cases cited.
Whether the decisions of this class of cases proceed upon the
charitable theory that the insurance company by mistake omitted
to make the required endorsement, or intended to waive the
provision regarding it, or upon the idea that its purpose was
to defraud the insured, and is for that reason estopped, is of
but little consequence, as any one of those theories is sufficient
to avoid the defense relied upon in this case." *Robbins* v.
*Insurance Co.*, 149 N. Y. 472. Nor does the following stand
upon a different principle except in degree: "Where, upon an
application for a fire insurance policy upon property covered
by a chattel mortgage, a representative of the plaintiff dis-
claimed any knowledge of claims against the property, but
stated that if there were any defendant's agents could ascertain
by inquiry of the plaintiff, which the agent voluntarily agreed
to do, but failed to do, that the policy is subsequently issued
with no reference to the chattel mortgage endorsed thereon
or added thereto as required by one of its conditions, is no de-
fense to an action upon it for a loss, since while the agent was
ignorant of the existence of the incumbrance, under the cir-
cumstances he was chargeable with knowledge of it, and, hav-

ing issued the policy, it was a waiver of the condition requir-
ing the indorsement, and the defendant is bound thereby."
*Skinner* v. *Norman,* 165 N. Y. 565.   In the opinion, the
court says such is the law "notwithstanding a provision in the
policy that no agent of the company shall have power to waive
any such condition, except by written endorsement though
a different rule prevails where a change in the title or occupa-
tion of the property occurs subsequent to the issue of the pol-
icy."

Nor, it is humbly and deferentially submitted, does the fol-
lowing extract from the opinion of Mr. Justice Shiras, the only
portion of it bearing directly upon this question, either answer
this reasoning in the language of the law, or cover the princi-
ples upon which this doctrine stands: "The fallacy of this
view is disclosed in the phrases we have italicized.   It was there-
by assumed that the agent had full knowledge of all the facts,
that such knowledge must be deemed to have been disclosed by the
agent to his principal, and that, consequently, it would operate
as a fraud upon the assured to plead a breach of the conditions.
This mode of reasoning overlooks both the general principle
that a written contract cannot be varied or defeated by parol
evidence, and the express provisions that no waiver shall be
made by the agent except in writing endorsed on the policy.
As we shall hereafter show when we come to consider the mean-
ing and legal purport of the contract in suit, such express pro-
vision was intended to protect both parties from the dangers
involved in disregarding the rule of evidence.   The mischief
is the same whether the condition turned upon the facts exist-
ing at and before the time when the contract was made, or
upon the facts subsequently taking place."

To say there is no difference between prior and subsequent
presumptive notice, with reference to the powers of the agent
in respect to a condition or matter, and that a limitation in the
policy upon the powers of the agent, which the assured has
never seen and could not have seen until after the acceptance
of the policy, which he had the right to presume would con-
form in every respect to the verbal contract which it was de-
signed and intended to embody, shall have the same effect as
to representations and transactions preceding the preparation
of the contract which the insurer undertook to write up, as it

has in respect to matters solemnly agreed upon to be done and observed after the contract has been written up and completed, and forms part of the completed contract itself, and after the insured has had presumptive notice of the want of power in the agent, is to overlook and lay aside that distinction, upon which a court of equity has always permitted the introduction of parol evidence for the purpose of canceling or reforming a written instrument, and refused to admit it for the purpose of altering, contradicting, varying, adding to, or subtracting from, a written agreement after it has been written in strict conformitory with the verbal agreement which it was designed to embody. This ignores the entire doctrine of rescission, cancellation and reformation of written contracts, or else it asserts that no such doctrine applies when the contract is made on one side through an agent of limited authority, while the other party was absolutely ignorant of the limitation until after he was irrevocably and unalterably bound. "In an action upon a policy of fire insurance, it appeared that no written application for insurance was made, and that the policy was written by defendant's agent, and accepted in good faith without examination, and not read by the insured until after the fire. The building insured was built for and used as a boarding house, and was erroneously described in the policy as 'occupied by the insured as a dwelling only." The plaintiff fully and accurately described the property to the agent as a boarding house, and it was seen and examined by the agent, and the misdescription was his act alone, *Held*, That the plaintiff was entitled to recover." *Dowling* v. *Insurance Co.*, 168 Pa. St. 234. In that case the court said, without dissent: "The fraud or mistake of an insurance agent within the scope of his authority will not enable his principal to avoid a contract of insurance to the injury of the insured who acted in good faith, and the fraud or mistake of the agent may be proved by parol evidence notwithstanding it is provided in the policy that the description of the property shall be a part of the contract and a warranty by the insured. This is clear upon principle, and it is abundantly sustained by authority. *Smith* v. *Farmers' and Mechanics' Mutual Fire Ins. Co.*, 89 Pa. 287; *Eilenberger* v. *Protective Mutual Fire Ins. Co.*, 89 Pa. 464; *Susquehanna Mutual*

*Fire Ins. Co.* v. *Cusick,* 109 Pa. 157; *Kister* v. *Lebanon Mutual Ins. Co.,* 128 Pa. 553; *Meyers* v. *Ins. Co.,* 156 Pa. 420."

"This case is much stronger for the plaintiff than those above cited. In all of these, written applications had been signed by the insured, and in each case the application was made a part of the contract. In this case no written application was made. and the policy was written by the agent and not read by the insured until after the fire. The building insured was built for and used as a boarding house, and was erroneously described in the policy as 'occupied by the insured as a dwelling only.' The testimony was clear and uncontradicted that there was no mistake or deception on the part of the plaintiff, who fully and accurately described the property to the agent as a boarding house and spoke to him of its capacity and use. It was seen and examined by the agent, and its use, which was apparent, was fully known to him. The misdescription was his act alone, in the face of light and knowledge, and was unknown to the insured until after the loss occurred. The defendant cannot be released from its contract because the plaintiff acting in good faith accepted without examination the policy written by its agent."

"In *Swan* v. *Watertown Ins. Co.,* 96 Pa. 37, the insured signed an application which had not been finished. He directed another to fill it up, and expressed a doubt as to the manner in which it should be done. It was held that he knew facts to incite him to read the policy, and was charged with knowledge of its contents, and should under the circumstances be presumed to have accepted it as written No such presumption arose in this case. Having made a full and frank disclosure of the facts of the company's agent, who was empowered to write the policy and who from observation knew the character and use of the building, there was nothing to induce or warn the insured to read the policy unless it was the anticipation of fraud or mistake, and this could impose no duty in protection of the rights of the defendant."

Church, Ch. J., delivering the opinion of the Court in *Hay* v. *Star Fire Ins. Co.,* 77 N. Y. (32 Sickels) 235, says: "It was bad faith on the part of the defendant to change so radically the terms of the policy, and deliver it as a policy simply renewing the old one without notice of change. A party, whose duty

it is to prepare a written contract, in pursuance of a previous agreement, to prepare one materially changing the terms of such previous agreement, and deliver it as in accordance therewith, commits a fraud which entitles the other party to relief according to the circumstances presented.  Equity will reform a written instrument in cases of mutual mistake, and also in cases of fraud, and also where there is a mistake on one side, and fraud on the other.  *(Welles* v. *Yates,* 44 N. Y. 525; *Rider* v. *Rowell,* 28 *Id.,* 310, and cases cited.)  The negligence of the plaintiff in not discovering the change and *laches,* in not sooner seeking relief, are questions which make the propriety of granting relief in a given case discretionary.  The court below upon the findings of fact we think properly exercised its discretion in this case in granting relief.  Policies of fire insurance are rarely examined by the insured.  The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments.  It is found that the plaintiff did not in fact examine the policy until after the fire, when for the first time, he was informed of the peculiar terms of this provision."  See also *Broadhead* v. *Insurance Co.,* 23 Hun. 397, and *Miaghan* v. *Insurance Co.,* 24 Hun. 58, in the syllabus of which the following is found:  "The plaintiff was, against the defendant's objection and exception, allowed to testify that he did not read the policy when it was delivered to him.  *Held,* no error; that it tended to show that he relied on the agent's acts."

The only new element in this case which could possibly distinguish it from the decisions made by this Court to which reference has been made, as holding that where the agent of the company issues a policy, without having taken any written application therefor, or having taken one, has incorrectly stated therein the information given to him by the applicant, the company is estopped from relying upon facts existing at the time the contract was made, differing from those incorrectly stated in the application for the policy, is the alleged notice of want of authority in the agent, conveyed by incorporating the limitation clause in the policy.  If this is not notice, there is nothing else in the case which forms the basis of even a pretense that it is to be distinguished from the other cases.  Nothing more need be said to show that it is not conclusive, actual notice,

irrevocably and unalterably binding the insured. To say so would be to take a position inconsistent with the law relating not only to insurance contracts, but all other kinds of contracts.

The courts, with few, if any, exceptions, say that, in the absence of any collusion between the agent and the insurer, where the latter has no knowledge of a limitation upon the authority of the former, the company is bound by the knowledge of the agent; and that if the applicant for insurance has truthfully answered the questions propounded to him and put the agent in possession of all the material facts necessary to the preparation of a valid contract of insurance, and the agent, in writing up the contract, incorrectly states the facts, or, in other words, writes the contract as if the facts were different from those given to him, or, having knowledge of the facts himself, without any representation from the applicant, writes a policy containing false recitals of the facts, whether the departure be due to an innocent mistake or to actual and willful fraud on his part, not participated in by the applicant, the company is estopped from making defense to an action on the policy on the ground of such departure or misrecital. Some of these cases decided by this Court and the court of appeals of Virginia, already cited, go further than this and hold that, if the agent, without any representation whatever from the applicant, writes up the policy, stating the facts upon his own responsibility, the company is likewise bound by his act and estopped from disputing the truth of the recitals in the policy. Why should not the company be bound under such circumstances as well as when the agent has made the inquiries and obtained correct information and then put false recitals in the policy? As has been shown, the company is bound because the contract would otherwise operate as a fraud upon the insurer. Would it not be an equally rank fraud to permit the company to take the premium and give no insurance in exchange therefor when the agent foregoes any inquiries whatever and assumes to write the policy himself? Authority other than our cases and the Virginia cases says the company is bound under such circumstances. "When the defendant's agent issued the policy without ascertaining from the owner whether the property was incumbered, he in effect determined that the

existence of incumbrances was immaterial, and the defendant agreed to insure the property incumbered or unincumbered. It was the agent's failure to comply with his agreement which led the plaintiff into what was practically a trap, and the defendant should not be allowed to plead its ignorance of a fact as to which it has agreed to obtain knowledge. I know that it has been said by a distinguished judge 'that illustration is not argument,' but at times it is at least a very convenient substitute for it. If in the case of distant property the owner should state to the insurance company that he did not know whether the premises were occupied or vacant at the time, I assume no one would deny that he might, by agreement with the company, obtain a valid policy of insurance if the endorsement 'occupied or unoccupied' was made on the policy." Cullen, Judge, in *Skinner* v. *Norman,* 165 N. Y. 565, 571. But if the applicant undertaking to state the material facts to the agent, has, by mistake or with fraudulent intent, misstated them, the agent may rely upon his statement and issue the policy in accordance therewith, and is not bound to inquire further as to the truth of the facts and, if the statements be untrue, the company may defend and be relieved from the contract on the ground of the falsity of the representations made by the insured. This is the class of cases in which the courts say that the agent need not examine the records as to the title of the insured and incumbrances upon the property and that the company is not bound by constructive notice. Here the applicant himself is at fault.

In this case, the agent of the insured, when solicited to take insurance upon the property did not say that the title of the insured was the fee simple estate in the property. He said either "The deed is deeded to my wife and her heirs born and unborn," or that "The property was deeded to Mrs. Medley and her heirs." To any one but a person learned in the law, this would hardly be taken to mean the fee simple title. To the layman it imports an estate in the heirs. Under the rule in *Shelly's case,* the word "heirs" in such deed is a word of limitation and not of purchase; and the rule involves intricate and fine distinctions, incomprehensible to any person except those who have studied the law. Upon this information, the agent assumed to write in the policy that Mrs. Medley owned the

fee simple title to the lot on which the building stood. Had he put upon that policy the words actually used by the agent of the insured, the company would, no doubt, have made inquiries which would have disclosed the actual state of the title. If the company has been prejudiced, the fault rests with its own agent. Upon the principles hereinbefore referred to, it is clear that no advantage of it can be taken by the company.

It is also urged that the clause providing for unconditional and sole ownership has been violated, because the insured had only a life estate and it was encumbered by a deed of trust. Though only a life estate, it was an unconditional estate and she was the sole owner of it. A life estate is a freehold of uncertain duration, but if it is free from any condition working a forfeiture of it before the death of the life tenant, it is absolutely unconditional. As she did not own that estate jointly with any other person and it had not been divided or segregated by any lease or in any other mode, it was sole ownership. It has been held over and over by this and other courts that the warranty of sole and unconditional or absolute and sole ownership, is not broken by the existence of an encumbrance on the land. *Wolpert* v. *Ins. Co.*, 44 W. Va. 734; *Insurance Co.* v. *Weill*, 28 Grat. 389; *Quarrier* v. *Ins. Co.*, 10 W. Va. 507. A mortgagor in possession, being the owner of the incumbered fee-simple title, has, sole, entire and unconditional ownership within the meaning of the policy. *Dolliver* v. *Ins. Co.*, 128 Mass. 315; *Insurance Co.* v. *Beck*, 43 Md. 358; *Insurance Co.* v. *Barker*, 7 Heisk. (Tenn.) 503; *Insurance Co.* v. *Haven*, 95 U. S. 242.

The foregoing observations sufficiently demonstrate that the court did not err in giving plaintiff's instructions No's 2 and 4, which read as follows:

2. "The court instructs the jury that if they believe from the evidence that before the issuance of the policy read in evidence, the duly authorized agent of the defendant who took the said policy and represented the defendant in procuring the same was fully informed of the facts of and concerning the plaintiff's title and ownership of the real estate referred to in said policy, and was informed of the provisions of the deed conveying said property to the plaintiff, and that he, the said agent, then and there informed the representative of the plaintiff that

the policy should be taken in the name of the plaintiff as the owner of said property, and that the representative of the plaintiff relying upon said representative and agent of the defendant, assented to such suggestion, and that the policy was accordingly so written by the representative of the defendant and delivered to the plaintiff and the representative of the defendant then and there accepted and received the premium for the said policy, then the defendant would not be relieved from liability under said policy, even if the deed referred to only vested a life estate in the plaintiff."

4. "The court instructs the jury that if they believe from the evidence that before the issuance of the policy of insurance read in evidence a trust lien on the real estate therein mentioned existed in favor of Ben Baer and that the agent of the defendant who acted in the issuance and delivery of said policy was informed and notified of the existence of said lien and of the fact that it remained unpaid and that the said agent then and there stated that the fact of the existence of said lien made no difference, and that he issued said policy and received the premium therefor with full notice thereof, then the defendant would not be relieved from liability on said policy on account of the existence at its date and delivery of the said deed of trust."

It is equally apparent that the court did not err in refusing to give defendant's instructions No's 3, 4 and 9, which read as follows:

3. "The jury are instructed that if they believe from the evidence that the agent, Thos. Popp, who solicited said insurance inquired of the agent and husband of the plaintiff as to who owned the property, to be insured, and said agent stated to said Popp, in answer to said inquiry, that the deed to said real property was to his wife and her heirs, born and unborn, or to her and her heirs, then the plaintiff is not entitled to a verdict in this case."

4. "The jury are instructed that if after said fire the plaintiff in her additional statement of proof of loss sent to the defendant, stated that said real estate so insured in said policy belonged to her and her heirs, then she is not entitled to recover as to said insurance on said building in this case."

9. "The court instructs the jury that if they believe from the evidence that the plaintiff was not the unconditional and

sole owner of the house described in the policy of insurance in this case at the date of the loss of said house, the jury cannot find any damages against the defendant by reason of the destruction of said house by fire, unless the jury further find from the evidence that the true title of the plaintiff to said property was made known to the defendant, or its agent, prior to said fire."

Another clause of the policy said that, unless otherwise provided by agreement endorsed thereon or added thereto, it should be void, "If, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or deed of trust." It may be very well doubted whether, if this clause had been brought to the attention of the insured at the time of the making of the contract, any policy would have been issued without an endorsement thereon waiving this condition, but it is in the policy, and relates to something which will occur, if at all, subsequent to the time of the making thereof. It is a part of the contract as made and that contract further stipulates that no agent shall have power to waive any of its conditions. As to these subsequent conditions or warranties, this non-waiver clause is effective. As to them it is not mere notice of want of authority. It rises to the dignity of an agreement that there is not, and shall not be, any power in the agent to waive. *Quinlan* v. *Ins. Co.*, 133 N. Y. 356, 365. "A provision that a policy shall be void in case of foreclosure proceedings is common in insurance policies, and we must assume that experience has shown to the underwriters that such proceedings increase the risk to the insurer. The defendant might have been willing for the premium charged to insure this barn with the mortgage upon it, and yet not willing to insure it in case of proceedings to foreclose the mortgage. It did assent to the mortgage and agree that loss, if any, should be paid to the mortgagee, but it did not assent to continue the insurance in case the risk was increased by proceedings to foreclose the mortgage. Before commencing the foreclosure the plaintiff should have obtained the assent of the defendant. It might have examined the circumstances and granted such assent without any conditions, or it might have required additional premium for the increased risk. It might have refused altogether, and in

that case the plaintiff could have delayed his foreclosure until the end of the year or surrendered the policy and procured insurance elsewhere. Even if the provision were found to be very inconvenient and embarrassing, there is no help for it. There it is, and we cannot take it out of the policy by construction." *Titus* v. *Ins. Co.*, 81 N. Y. 410. See also *Quinlan* v. *Ins. Co.*, 133 N. Y. 356.

Notwithstanding this clause and the fact that notice of sale under the deed of trust was given and served upon Mrs. Medley, it is urged that the policy was not thereby avoided, for the reason that she brought a suit in equity and enjoined the sale, and after dissolution of her injunction by the court below, took time for an appeal to this Court and thereby defeated the sale until after the loss by fire occurred. The condition does not say that if sale is made the policy shall become non-effective, but that notice of sale shall avoid it. This clause is inserted by insurance companies for their protection, because it is said that when forecloseure proceedings are commenced with the knowledge of the insured, the risk is thereby increased, as under such conditions the temptation to burn the property and thereby procure money to discharge the lien may be very great, according to the exigencies of the situation. It is, therefore, considered a reasonable and prudent condition, and though, in some cases, it may work great hardship, the courts can do nothing but enforce it.

The forfeiture thus effected could have been waived by the company, or by the agent acting under enlarged powers, but not under his authority as limited by the policy, and there is some evidence tending to show an offer by the local agent to pay one thousand dollars in satisfaction of the claim. If this could operate as a waiver, there is no evidence of the authority of this agent to waive. Nor is there any evidence of waiver on the part of the company, unless its failure, or offer, to return the premium could so operate, but it cannot. As to this condition, violated after the policy became effective and operative, the return of the premium is not a prerequisite to an assertion of the forfeiture. It does not render the policy void *ab initio*. It is not cause for rescission, in the execution of which the parties must be put in *statu quo*, nor is it a case of the ratification of an unauthorized contract, made by an agent, by

retention of benefits thereunder. If it were not a breach of a promissory warranty, but a violation of a stipulation as to a fact relating to title or condition of the property, or to some other matter affecting the inception of the contract, retention of the pemium might, on sound principle, amount to a waiver of the breach, for the ground of defense there would be the want of a valid contract to start with, and not the cessation of a contract, in the manner therein appointed by the parties for putting an end to it, after it has gone into effect.

This conclusion makes apparent the error of the court in giving plaintiff's instruction No. 5, which reads as follows:

"The Court instructs the jury that if they believe from the evidence that before the time of the alleged fire a notice of sale was given under the deed of trust to secure Ben Baer, read in evidence after the issuance of the policy of insurance declared on, but that said notice was given without the procurement or knowledge of the plaintiff and that she had no notice of the fact that it was intended to give notice of such sale until she was served with such notice, and that no sale was ever made under the said notice or under the said trust deed, then the defendant would not be relieved from liability on account of said policy by reason of the issuance of such notice of sale."

The policy provides that it shall be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after loss; and the court is said to have erred in refusing to instruct the jury that if the plaintiff, in her proof of loss, verified by her oath, and transmitted to the company, "stated that the building covered by said policy and for the loss of which she was seeking pay from the defendant under said policy, belonged to her at the time said insurance was effected and procured, then the jury must find for the defendant." The instruction was fatally defective in omitting to say the false swearing must have been done knowingly and with fraudulent intent. May on Ins. section 477. For a similar reason the objection to plaintiff's instruction No. 3 is unsound. The inclusion of property in the proof of loss which did not belong to the insured could not defeat her claim, unless it was fraudulent.

Plaintiff's instruction No. 1, saying the failure of the insured to furnish sufficient proofs of loss would not preclude re-

covery, provided the jury should find the defendant, within the time allowed for proof of loss, denied liability on grounds other than failure to furnish such proofs, was proper, as there was evidence tending to prove such denial, and the court did not err in refusing defendant's instruction No. 16, because it ignored this evidence and might have misled the jury, if it had been given. "A denial by an insurance company of its liability on other grounds, before any preliminary proofs are made, and before the time within which such proofs are to be made by the terms of the policy, is in law a waiver of the conditions of a policy requiring such proofs." *Sheppard* v. *Ins. Co.,* 21 W. Va. 368, pt. 14 syl.

Whether any demand was made for the certificate of the disinterested magistrate or notary public, living nearest the place of the fire, as to the amount of the loss, is a question of fact, calling for no decision, or expression of opinion here.

Benj. Baer, holding a lien on the property by deed of trust, took out additional insurance on the property. Whether, if the plaintiff had knowledge of this, it would have avoided the policy need not be decided, for a slip was attached to the policy, saying, among other things, "$———— other Concurrent Insurance permitted," and the policy on its face gave the agent authority to consent to additional insurance. It is urged that, as no amount was stated it must be presumed that this slip was left on inadvertantly and should not be treated as a part of the contract, but contracts of insurance are construed most strongly against the company. *Bryan* v. *Ins. Co.,* 8 W. Va. 605; *Quarrier* v. *Ins. Co.,* 10 W. Va. 507; *Miller* v. *Ins. Co.,* 12 W Va. 116. For the same reason, any doubt as to whether a paper attached to the policy is a part of it, ought to be resolved against the company. It prepares the policy.

Whether the principles here announced are inconsistent with the application of the law in *Maupin* v. *Insurance Co.,* 53 W. Va. 557, depends upon the determination of a question of fact involved in that case. If the attempted waiver is regarded as having been made at the time the contract was made and without notice to the insured of the limitation upon the agent's authority, according to my view of the case, some conclusions announced here are inconsistent with that decision, but if it was an attempted waiver after the policy became effective, as

seems to have been the finding by the majority of the Court, there is no such inconsistency. As abstract law, however, point 3 of the syllabus in *Maupin* v. *Insurance Co.,* is not in accord with the views here expressed, in so far as it asserts that there can be no waiver of the "Iron Safe," or a similar, clause "before the time of the issuance of the policy."

For the error above noted, as well as for insufficiency of evidence to support the verdict, the judgment will be reversed, the verdict set aside, a new trial granted, and the case will be remanded.

*Reversed.*

Note by BRANNON, JUDGE:

I agree to the judgment. I do not agree to the opinion excusing one from reading a policy before he accepts it, and excusing him from its conditions because he did not read or understand it. I think that when a man accepts a deed he is bound by its terms. If it departs from the agreement, and he accepts it, he waives the points of departure. The agreement is merged. The deed is a contract; so is a policy of insurance. *Weidert* v. *State Ins. Co.,* 20 Am. St. R. 809. I do not agree to take from the company the condition that the policy should be void, if the insured owned less than a fee. A company would be willing to take a risk, if the insured owned a fee, but not if he owned only a life estate. A person owning a life estate could make money by burning or by being careless. This company never agreed to insure a life estate. It had right to put that condition in the policy. It is advisable and prudent for its safety; but reasonable or unreasonable, it had right to fix any terms it pleased, and the other party had right to accept or reject the policy. The insured is bound to know the meaning of the policy, and cannot plead ignorance of law.

I do not agree to allow oral evidence preliminary to the contract to change its terms. The authorities given in *Maupin* v. *Scottish Union,* 45 S. E. 1003, (53 W. Va. 557), will sustain this view. That oral evidence is that the agent was told that the deed was to Mrs. Medley and heirs. That in law meant a fee simple, just as the policy says. So, the agent did not write the policy different from the statement, in the eye of the law.

I do not agree that the disability of the agent to waive vital conditions extends only to things occurring subsequently to

the issue of the policy. It is agreed that an agent may not, after the policy issues, waive conditions; but it is said before it issues, he may waive the duty of the insured to conform thereafter to its requirements, and may waive the presence or existence of essential facts at the date of issue, for instance, that the party has a fee simple. That is, though the company is willing to risk only on the basis of a certain state of things, yet the agent in every place can waive them, and accept another basis, and this in the face of the policy which says that it is issued on the faith of a certain specified basis, and further that no agent can dispense with that basis. This seems to deny right of contract, and to be hard and unjust to insurance companies, which are valuable institutions to the country. Their dangers are great enough, contract as carefully as they may; but to take from them right to protect themselves against their agent's wrongful acts imposes unjust burdens, and exposes their written contracts to defeat from perjured oral evidence. An insurance company has right to defend itself against fraud and falsehood, to put in conditions as to the title of the property, the duration of the estate, and other matters as they exist at the date of the policy, and make the policy conditional upon them, and it has right to warn the other party that no agent can waive such conditions. It does this by the very letter of its policy. The insured accepts upon such conditions, including the statement that no agent can dispense with such conditions. I have always understood that a purchaser of land is bound to know, whether in fact he does or not, *clauses,* conditions and limitations, not only in the last instrument in the chain of title, the deed to him, but also away back in any deed in the chain; but here it is proposed to release a party from a condition set before his eyes in the very deed to him. *Waldron v. Harvey,* 46 S. E. 603, 54 W. Va. 608. An insurance company deals with persons far off, and has to do so by agents. If bound by their waivers, by agreements between the insured and the agents, it would be ruined. It would be subject to oral evidence, sometimes true, oftener false. It is absolutely necessary that it put its terms and conditions in its policy, and if you nullify these, it has no protection. You impair, destroy its contracts. I assert that any man may limit the power of his agent. Any one dealing with him must inquire as to his power. But plainer

yet, the principal can limit his agent's authority, and notify those dealing through him, as in this case. The policy holder or acceptor is told by his policy of the limitation. That limitation of power is general, applies to any and every condition, prior or subsequent.

As to the argument that the agent was told one thing as to the title, and wrote another in the policy, and therefore the policy can be reformed, so as to conform to the statement. That makes it conform to what the one side agreed to, but what the other side never agreed to. That forces on the company a contract it never made. Equity never reforms a deed except to correct *mutual* mistake. Where both sides do agree to the same particular thing, and agree to have an instrument drawn to do that thing, and the scrivener fails to make the document accomplish what both parties intended it to do, equity will reform; but not where both sides never agreed to do that same thing. In the one case you carry out the intention of both sides; in the others, you carry out the intention of *one* side, but defeat the intention of the *other,* and make for him a new agreement. In such case equity will rescind, but not reform. *Ferrel* v. *Ferrel*, 53 W. Va. 515.

Some of our decisions may seem in contrast with the view above expressed, and if it were not for the recent labored consideration of the whole question by the Supreme Court of the United States in *Northern Co.* v. *Grand View,* 183 U. S. 308, I should not be so insistent upon the matters above discussed. I referred to that case at length in *Maupin* v. *Ins. Co.,* 53 W. Va. 557, and now cite the latter case for fuller views. On a question of insurance I think the decision of the supreme court ought to govern. See *Ritchie Co. Bank* v. *Ins. Co.,* decided this term, for views touching this question.

JUDGE MILLER concurs in this note.